FILED
2026 Sep-21 PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**WILLIAM MOODY,**
Plaintiff,

**v.**

**Case No. 2:25-cv-991-CLM**

**FRANK BISIGNANO,**
**Commissioner of the Social Security Administration,**
Defendant.

# MEMORANDUM OPINION

William Moody seeks disability and disability insurance benefits ("DIB") from the Social Security Administration ("SSA") based on several impairments. The SSA denied Moody's application in an opinion written by an Administrative Law Judge ("ALJ").

Moody argues that the ALJ erred because substantial evidence does not support the ALJ's evaluation of Moody's subjective pain testimony and finding that Moody has the residual functional capacity to perform a range of light work. As detailed below, the ALJ applied the correct legal standards, and substantial evidence supports his decision. So the court will **AFFIRM** the SSA's denial of benefits.

## I. STATEMENT OF THE CASE

### A. Moody's disability, as told to the ALJ

Moody was 57 on his alleged disability onset date. (R. 239). Moody attended one year of college and has past work as a gas technician, maintenance worker at a Tyson chicken plant, and water meter technician. (R. 289).

At the ALJ hearing, Moody testified that he suffers from morbid obesity, atrial fibrillation, congestive heart failure, cardiomyopathy, diabetes, high blood pressure, high cholesterol, chronic kidney disease, cataracts, and retinopathy. (R. 115–16). According to Moody, he cannot work because he suffers from shortness of breath, poor balance, sometimes falls, and gets lightheaded/dizzy. (R. 116). Moody says that he can only walk about 30 to 40 yards before he experiences shortness of breath and cannot pick up anything that is heavy. (R. 117). Though Moody acknowledges that he does not suffer from any musculoskeletal issues. (R. 117).

Moody lives alone, can drive, and can use a cell phone. (R. 112–13). Moody testified that he spends most of the day off his feet. (R. 118). For example, Moody spends six hours off his feet from 8:00 AM to 5:00 PM each day. (*See id.*).

**B. Determining Disability**

The SSA has created the following five-step process to determine whether an individual is disabled and thus entitled to benefits under the Social Security Act:

| The 5-Step Test | | |
|---|---|---|
| Step 1 | Is the Claimant engaged in substantial gainful activity? | If yes, claim denied.<br>If no, proceed to Step 2. |
| Step 2 | Does the Claimant suffer from a severe, medically-determinable impairment or combination of impairments? | If no, claim denied.<br>If yes, proceed to Step 3. |
| Step 3 | Does the Step 2 impairment meet the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appx. 1? | If yes, claim granted.<br>If no, proceed to Step 4. |

| **Determine Residual Functional Capacity** | | |
|---|---|---|
| Step 4 | Does the Claimant possess the residual functional capacity to perform the requirements of his past relevant work? | If yes, claim denied. If no, proceed to Step 5. |
| Step 5 | Is the Claimant able to do any other work considering his residual functional capacity, age, education, and work experience? | If yes, claim denied. If no, claim granted. |

*See* 20 C.F.R. §§ 404.1520(a), 404.1520(b) (Step 1); 20 C.F.R. § 404.1520(c) (Step 2); 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 (Step 3); 20 C.F.R. § 404.1520(e-f) (Step 4); 20 C.F.R. § 404.1520(g) (Step 5).

As shown by the gray-shaded box, there is an intermediate step between Steps 3 and 4 that requires the ALJ to determine a claimant's "residual functional capacity," which is the claimant's ability to perform physical and mental work activities on a sustained basis.

### C. Moody's Application and the ALJ's Decision

The SSA reviews applications for benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1-4).

Moody applied for DIB and a period of disability in April 2022. (R. 236–42). According to Moody, he could not work because he suffers from congestive heart failure, atrial fibrillation, and diabetes. (R. 288). After receiving an initial denial in February 2023, Moody requested an ALJ hearing, which was held in May 2024. The ALJ ultimately issued an opinion denying Moody's claims in June 2024. (R. 11–23).

At Step 1, the ALJ determined that Moody was not engaged in substantial gainful activity and thus his claims would progress to Step 2.

At Step 2, the ALJ determined Moody suffered from the following severe impairments: congestive heart failure, cardiomyopathy, atrial fibrillation, diabetes mellitus with retinopathy, and morbid obesity.

At Step 3, the ALJ found that none of Moody's impairments, individually or combined, met or equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. So the ALJ next had to determine Moody's residual functional capacity.

The ALJ determined that Moody had the residual functional capacity to perform a range of light work with these added limitations:

- Moody can occasionally climb ramps and stairs.
- Moody cannot climb ladders, ropes, or scaffolds.
- Moody can frequently stoop, kneel, crouch, and crawl.
- Moody can occasionally be exposed to extreme cold and extreme heat.
- Moody cannot be exposed to excessive vibration.
- Moody cannot be exposed to workplace hazards such as moving mechanical parts and high, exposed places.
- Moody's vision is such that he can avoid ordinary hazards in the workplace (e.g., boxes on floor, doors ajar, etc.).

At Step 4, the ALJ found that Moody could perform his past relevant work as a water meter reader and gas leak inspector. Thus, the ALJ did not proceed to Step 5 of the five-step process.

Moody requested an Appeals Council review of the ALJ's decision. The Appeals Council will review an ALJ's decision for only a few reasons, and the Appeals Council found no such reason under the rules to review the ALJ's decision. As a result, the ALJ's decision became the final decision of the SSA Commissioner, and it is the decision subject to this court's review.

## II. STANDARD OF REVIEW

This court's role in reviewing claims brought under the Social Security Act is narrow. The scope of the court's review is limited to (a) whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g), and (b) whether the ALJ applied the correct legal standards, *see Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford*, 363 F.3d at 1158.

## III. LEGAL ANALYSIS

Moody argues that substantial evidence does not support the ALJ's evaluation of Moody's subjective pain testimony and finding that Moody can perform a reduced range of light work. The SSA's regulations define light work as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b). Even so, "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with pushing and pulling of arm or leg controls." *Id.*

An ALJ must apply the "two-step" pain standard to subjective testimony regarding pain and other symptoms. Under this standard, the claimant must first present "evidence of an underlying medical condition." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If he does, the claimant must then either: (a) present "objective medical evidence confirming the severity of the alleged pain," or (b) show "that the

objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *See id.* This court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

At the ALJ hearing, Moody testified that he cannot work because he suffers from shortness of breath and struggles with his balance. (R. 116). He also explained that he cannot walk far and gets lightheaded and dizzy. (*Id.*). And Moody said he quit his last job as a gas technician because he was sometimes required to walk four to five miles a day, which he couldn't physically do. (*Id.*). Moody also stated that he: (1) can't walk more than 30 to 40 yards before needing to rest; (2) can only lift around 20 pounds; and (3) spends about six hours out of an eight-hour workday off his feet. (R. 117–18).

The ALJ found that Moody's medically determinable impairments could reasonably be expected to cause these alleged symptoms. (R. 16). But the ALJ determined that Moody's statements about the intensity, persistence, and limiting effects of his symptoms weren't entirely consistent with the record evidence. (R. 16–17). Thus, despite Moody's impairments, the ALJ found that he could perform a reduced range of light work at a sustained rate. As explained below, the ALJ adequately supported his credibility determination and residual functional capacity assessment by pointing to Moody's objective medical records, treatment history, and self-reported daily activities.

1. *Objective medical evidence*: Moody asserts that the ALJ failed to properly evaluate his treatment history and medical records because he overlooked or ignored records that supported Moody's testimony about the limitations caused by his impairments. As Moody notes, he reported in July 2022 "some exertional shortness of breath" and was diagnosed with "persistent atrial fibrillation." (R. 833). So his cardiologist recommended "at least 1 attempt at direct current cardioversion." (*Id.*). In August 2022, a direct current cardioversion was attempted but unsuccessful. (R. 428).

The next month, Moody reported "some mild exertional shortness of breath" but was otherwise stable. (R. 656). Moody continued to report shortness of breath during his 2023 cardiology exams. (R. 654, 779). And in January 2024, Moody reported having progressive shortness of breath, which limited his activity, and said he had developed chest pain. (R. 812). So in February 2024 Moody underwent a heart catheterization. (R. 815).

The ALJ recognized that Moody has a history of congestive heart failure, cardiomyopathy, and atrial fibrillation. (R. 17). But the ALJ determined that these impairments were well controlled with conservative treatment and don't preclude Moody from working on a sustained basis. (*Id.*). Substantial evidence supports the ALJ's finding. For example, the same cardiology records that note Moody's shortness of breath report that Moody: (1) "overall has felt well"; (2) was not having palpitations or chest pains; and (3) was doing "very well with Eliquis which he is tolerating well." (R. 833). And in September 2022, Moody reported that he had not been weak and dizzy. (R. 656). During his 2023 cardiology appointments, Moody was also found to be stable, not suffering from chest pains or palpitations, and not reporting any dizziness. (R. 654, 779). Finally, February 2024 cardiology records note that Moody "has not had issues since his heart catheterization and overall states that he feels better." (R. 791). As the ALJ noted, these February 2024 records also show that Moody's breathing was stable and that though Moody suffers from atrial fibrillation, he had "good heart rate control." (R. 20, 791–92).

As for Moody's diabetes, the ALJ recognized that in October 2021 Moody's A1C was 11.2% and that his blood sugar was 306 mg/dl. (R. 17, 534). But despite stating that he does not take his medication like he should, Moody reported no night sweats, mouth ulcers, incontinence, urinary frequency, swelling of extremities, muscle weakness, fatigue, or burning sensation in his extremities. (*See id.*). Moody was then continued on his prescription medication and told to follow a low cholesterol, low sugar diet. (R. 534). When Moody returned for a follow-up appointment in December 2021, his blood sugar had decreased to 287 mg/dl. (R. 530). Moody also reported that he could take care of himself, walked without

restrictions, and had no difficulty doing errands alone or walking and climbing stairs. (*Id.*).

In August 2022, Moody's A1C had decreased to 9.0%, and his blood sugar had fallen to 213 mg/dl. (R. 521). But Moody reported blurred vision. (*Id.*). Moody was later diagnosed with cataracts, had surgery of his left eye in November 2022, and surgery of his right eye in February 2023. (R. 592, 605, 608). On November 21, 2022, Moody stated that he was suffering from burning and tingling in both feet. (R. 506). But Moody's gait, stance, and motor strength were normal. (R. 509). Though Moody's blood sugar fluctuated between November 2022 and January 2023, it was back down to 213 mg/dl in February 2023. (R. 499). And in March 2023, Moody reported to his cardiologist "that his diabetes has been better controlled but remains present." (R. 654). By January 2024, Moody's glucose was 141 mg/dl, and he stated that he had "been able to control [his] glucose with [his] current treatment/plan." (R. 859). That same month, Moody was diagnosed with "mild nonproliferdative diabetic retinopathy with macular edema, associated with type 2 diabetes mellitus." (R. 786).

A reasonable person could review these medical records and agree with the ALJ that Moody's impairments weren't as severe as he alleged at the ALJ hearing. A reasonable person could also agree that Moody can perform a reduced range of light work. And though Moody argues otherwise, the ALJ didn't "cherry pick," which medical records he considered. Instead, the ALJ cited to evidence both favorable and unfavorable to Moody, including the treatment notes from his cardiologist and primary care physician. Plus, an ALJ does not need to cite to every piece of evidence so long as this court can tell that he considered the claimant's "medical condition as a whole." *Mitchell*, 771 F.3d at 782. The court is satisfied that the ALJ considered Moody's medical condition as a whole and that substantial evidence supports the ALJ's findings related to the objective medical evidence.

2. *Daily activities*: Moody also says that the ALJ erred in discrediting his subjective pain testimony based on his daily activities. A claimant's admission that he participates in daily activities for short durations does not disqualify the claimant from disability, *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997), but it is appropriate for an ALJ to consider daily activities relevant to a claimant's subjective pain allegations, *see* 20 C.F.R. § 404.1529(c)(3)(i).

According to Moody, the ALJ's description of his daily activities was inaccurate because the ALJ did not note several limitations Moody identified when reporting his activities. For example, Moody points out that during a November 2022 consultative exam, he reported that his mother assisted him with meal preparation, household chores, and shopping. (R. 453). Moody also stated that he did not drive because of his diminished vision. (*Id.*). But in August 2023, Moody reported that he could drive himself and that he goes shopping around once a week for a few hours. (R. 338). And though Moody said he only prepares simple food, he admitted that he prepares his own food or meals daily. (R. 337). So the ALJ didn't mischaracterize the facts.

Plus, even though Moody may have qualified his level of activity, it was still appropriate for the ALJ to consider Moody's daily activities when assessing his subjective testimony and residual functional capacity. *See* 20 C.F.R. § 404.1529(c)(3)(i). Nor did the ALJ overly rely on Moody's daily activities in making his findings. Instead, the ALJ appropriately considered Moody's daily activities as one of several factors to consider when weighing Moody's credibility and assessing his residual functional capacity. Thus, the court sees no error in how the ALJ assessed Moody's daily activities.

—

This court may reverse the ALJ's credibility determinations only if the ALJ "was clearly wrong to discredit" the claimant's subjective pain testimony. *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011). And the court cannot "decide the facts anew, reweigh the

evidence, or substitute [its] judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Applying this standard, the ALJ did not reversibly err in making his credibility determination or finding that Moody can perform a reduced range of light work.

## IV. CONCLUSION

For these reasons, the court will **AFFIRM** the SSA's denial of benefits. The court will enter a separate final order that closes this case.

**Done** on September 21, 2026.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE